IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MICHAEL M. CLIMER,

          Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

          Defendant.

No. CV 06-6308-MO

OPINION AND ORDER


**MOSMAN, J.,**

      Plaintiff Michael Climer seeks judicial review of the Social Security Commissioner's final decision denying his application for Child's Insurance Benefits and Supplemental Security Income under the Social Security Act. For the reasons set forth below, the Commissioner's decision is REVERSED, and this case is REMANDED FOR FURTHER PROCEEDINGS pursuant to sentence four of 42 USC § 405(g).

      The Commissioner's decision will be upheld if it follows correct legal standards and is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). His decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d

1035, 1039-40 (9th Cir. 1995).   The parties in this case are familiar with the facts of the case and they will not be set out here except as is relevant to the discussion below.   The initial burden of proof rests upon the claimant to establish her disability.   *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).

Here, the administrative law judge ("ALJ") applied the required five-step sequential process and determined Mr. Climer retained the residual functional capacity ("RFC") to perform a reduced range of medium exertional level work, limited to simple, routine, repetitive work that involves no skilled or detailed work.   Based on a Vocational Expert's ("VE") testimony, the ALJ found Mr. Climer retained the ability to perform work as an industrial cleaner, hand packager, or warehouse worker.   As a result, the ALJ found Mr. Climer was not disabled.   Mr. Climer contends the ALJ erred by: (1) failing to find his learning disability a severe limitation at step two; (2) posing an inadequate hypothetical question to the VE; (3) improperly rejecting lay witness testimony; (4) improperly rejecting non-examining practitioners' opinions; (5) improperly rejecting treating provider's opinion; and (6) finding Mr. Climer not fully credible.

I.      Severity of Impairments at Step Two

Mr. Climer contends that the ALJ erred by failing to find his learning disability a severe limitation at step two.   The ALJ found that Mr. Climer's mild depressive disorder, in combination with mild cognitive limitations, were severe impairments.   Tr. 21.

At step two, the ALJ determines whether the claimant has "a medically severe impairment or combination of impairments."   *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987). "An impairment is not severe if it does not significantly limit [the claimant's ] physical or mental ability to do basic work activities."   20 CFR § 404.1521(a).   Basic work activities mean the "abilities and aptitudes necessary to do most jobs" and include, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."   20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 U.S. at 153-54.   An impairment or combination of impairments can be found "not

severe" only if the evidence establishes a slight abnormality that would have "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28, 1985 WL 56856; *see also Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (applying SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's statement of symptoms alone. 20 CFR § 404.1508.

Here, the ALJ properly determined that Mr. Climer had severe impairments at step two and continued the analysis. In addition, as discussed below, limitations arising out of Mr. Climer's impairments were included in the hypothetical question posited to the VE. Thus, any error in failing to identify other limitations as "severe" at step two is harmless.

II.    Adequacy of the Hypothetical Question

The ALJ found that Mr. Climer was restricted to simple, medium exertional level work. The VE testified that a person with such limitations would be able to work as an industrial cleaner, a hand packager, or a warehouse worker. Tr. 467.

An industrial cleaner position, as defined by the Dictionary of Occupational Titles ("DOT"), requires level two reading, with a passive vocabulary of 5,000 to 6,000 words, and the ability to read at the rate of 190-215 words per minute.[1] The position further requires the ability to write compound and complex sentences. The hand packager and warehouse worker positions require level one reading, with the ability to recognize 2,500 two to three syllable words, and the ability to print simple sentences.

Mr. Climer contends that he has a learning disorder, and that his limited ability to read and write preclude his ability to perform the identified jobs. Mr. Climer was in special education classes while in school, and at the age of nine and a half, his auditory-perception skills were equivalent to those of a child aged six years and two months. Tr. 200. During that school

---

[1]Information available at http://www.occupationalinfo.org/appendxc_1.html#III.

PAGE 3 - OPINION AND ORDER

year, his fourth grade year, Mr. Climer attended school 51% of the time.  Tr. 169.  The following

year Mr. Climer attended school 60% of the time.  *Id.*  His physicians repeatedly noted that Mr.

Climer played video games all night and slept all day, and that Mr. Climer and his mother lacked

motivation to attend school.  Tr. 269, 268, 266, 263, 262, 261, 257, 254, 253, 251, 246.  Mr.

Climer was primarily home schooled from the sixth grade.

In September 2000, the Salem-Keizer School District found that Mr. Climer qualified for

special education services because of the discrepancy between his chronological age and his level

of achievement in oral expression, basic reading skills, and reading comprehension.  Tr. 167.

The District determined that Mr. Climer had a learning disability.  *Id.*

In a June 2003 Intellectual Assessment, Mr. Climer read at a first grade equivalent and

spelled at kindergarten level.  Tr. 215-18.  The examiner's diagnostic impression was that Mr.

Climer had a Learning Disorder NOS, for reading, spelling and arithmetic. While a physician and

a physician's assistant have questioned whether Mr. Climer has a learning disability, no formal

medical diagnosis of a learning disability has been made.  Tr. 248, 247.

Subsequent testing in February 2006 indicated that Mr. Climer read at a second grade

equivalent and had math skills at a third grade equivalent.  Tr. 380-86.  Although the latter

testing also "reflected a motivational disorder, such that he attempted to portray himself as more

cognitively impaired in completing today's examinations," Tr. 383, I find the ALJ erred by failing

to advise the VE of Mr. Climer's limited reading, writing, and math skills.  The VE must testify

to the effects, if any, these limitations might have on Mr. Climer's ability to perform work, and

the identified jobs in particular.

III.     Lay Witness Testimony

Ms. Laurie Climer, Mr. Climer's mother, completed a Function Report on March 6, 2003,

in which she stated that Mr. Climer could neither read nor write.  Tr. 75.  Ms. Climer indicated

that Mr. Climer was unable to understand, carry out, and remember simple instructions.  *Id.*  At

the hearing, Ms. Climer testified that Mr. Climer was unable to fall asleep at a regular time, and

often was awake much of the night and asleep much of the day.  Tr. 442-49.  Ms. Climer testified

that medications prescribed for the inability to fall asleep had been ineffective.

The ALJ stated that he had considered Ms. Climer's  "oral testimony," and accorded it

"little or no weight" in determining the severity of Mr. Climer's impairments, noting that there is

"more reliable evidence" from medical professionals.  Tr. 19.  The ALJ erred by failing to

mention Ms. Climer's written testimony.  *Stout v. Commissioner,* 454, F3d 1050, 1054 (9th Cir

2006).  On remand, the ALJ must give reasons germane to Ms. Climer if he determines to

disregard her testimony.

IV.  Non-examining Practitioners

Robert Henry, Ph.D., found that Mr. Climer had a marked limitation in the ability to

acquire and use information, noting that he was unable to read or write.  Tr. 236.  Kathy Bates-

Smith, Ph.D., affirmed Dr. Henry's decision, adding that Mr. Climer was precluded from

completing detailed or complex tasks.  Tr. 244.  Mr. Climer argues that the ALJ erred by failing

to address either opinion.  However, the ALJ did address both opinions and gave them

"significant weight."  Tr. 19, ¶ 5.

V.  William Williams, PAC

The ALJ stated:

 The claimant's treating provider, William Williams, PA-C [sic], noted on
August 15, 2003, that the claimant's mother reported that the claimant
had applied for disability due to his inability to get a job due to a learning
disorder.  Mr. Williams noted the claimant possibly had a learning disability
 which may prevent him from working.  This statement appears based on the
claimant's mother's report.  Mr. Williams advised the claimant's mother to
get him into Behavioral Network for him to be screened for a mental illness
and at the same time screen for a learning disability prior to reapplying for
Social Security Benefits.  It is noted treatment notes and assessments from a
Physicians Assistant, without concurrent review and signature from a medi-
cal doctor, are not considered to be from an 'acceptable medical source,' and
although considered, such reports usually do not receive as great an amount
of weight, than as those reports from acceptable medical sources [citations
omitted].  It is clear that much of the information Mr. Williams used in
making his assessments came from the claimant's own subjective reports
and/or the report of the claimant's mother without any objective corrobora-
tion.  Yet, as explained elsewhere in this decision, there exist good reasons

for questioning the reliability of the claimant's subjective complaints. Therefore, I have given very little weight Mr. Williams' assessment that the claimant may be prevented from working due to a possible learning disability.

Tr. 20.

Mr. Climer argues that the ALJ erroneously rejected Mr. Williams opinion because it is not from an acceptable medical source. This is incorrect. The ALJ's plain language makes clear that he did not reject Mr. Williams' opinion outright, and that he properly weighed the opinion based on the source.

Mr. Climer argues that " a look at the history of William Williams PAC and the Plaintiff and his mother reveals that Mr. Williams is not a person that accepted the complaints of Plaintiff or his mother at face value. In fact, it appears at times, that the relationship was adversarial more than remedial." Plaintiff's Opening Brief, p. 18. Mr. Climer cites Williams' April 1996 case note in which he states, "I have seen Michael here before because of problems with truancy. There is definitely a discipline problem in the family. He does not go to bed on time and he does not like to get up. The pt has also fend illness on numerous occasions to get out of school and I advised mom that if he did not have a fever he should go to school." Tr. 263. Mr. Climer also cites a November 1995 case note in which Mr. Williams stated:

> My concern with Mike is a continuation of the problem that was addressed in my medical evaluation of Mike on 8/29/95. The pt has a discipline problem and has been habitually truant. Lori his mom states that she does not want to man handle him...however I advised her that she is abusing him by allowing him to stay out of school....A: 1. Truancy: This is a behavior problem which both the child and the mother need to come to grips with. The child repeatedly c/o feeling ill, however this is a well person. The mother needs to be more forceful in executing her responsibilities as a parent and in getting this child educated....it is up to his mom to use whatever measures are necessary, such as cold water in the face to get him out of bed. Then she should take him to school either in his pajamas or otherwise forcefully and start him riding the bus....The child was warned that failure for him to abide by truancy laws could result in him being placed in a foster situation which he does not desire nor does his mother.

Tr. 266. Essentially, Mr. Climer argues first that the ALJ failed to give adequate weight to Mr.

PAGE 6 - OPINION AND ORDER

Williams' opinion that he "possibly had a learning disability which may prevent him from working," and second that Mr. Williams' opinion itself is not credible because the relationship was adversarial.  The record does not support Mr. Climer's argument.  Mr. Williams' concern regarding Mr. Climer's truancy and his mother's inability to address that truancy is supported by both the medical and school records.  The ALJ properly weighed Mr. Williams' opinion.

VI.  Mr. Climer's Credibility

        The ALJ found Mr. Climer's testimony that he is unable to work not fully credible, citing a lack of medical evidence and the reports of multiple treating providers that Mr. Climer lacked motivation, discipline, and parental guidance, and feigned illness to avoid school.  Tr. 268, 263, 253, 251, 236.  The ALJ noted the opinion of  treating physician Lance Loberg, M.D., that Mr. Climer should consider looking for a night job because being in the work force "may be better for him than anything else."  Tr. 246, 305.  The ALJ noted the assessment of  Barb Coulter, Q.M.H.P., during which Mr. Climer stated that he did not want treatment or medication, but "a letter advocating for SSI."  Tr. 361-69.  The ALJ reported that the impartial medical expert, Larry Hart, Ph.D., testified that he suspected possible malingering.  Tr. 460.  The ALJ cited the post hearing neuropsychological evaluation by Robert A. Kruger, Psy. D., in which Dr. Kruger stated, "Michael's overall presentation and performance on the TOMM was such that his test scores reflected a motivational disorder, such that he attempted to portray himself as more cognitively impaired in completing today's examinations.  Thus the reader is to be cautious in interpreting test results."  Tr. 383.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

The ALJ articulated clear and convincing reasons to find Mr. Climer less than fully credible in his allegation that he is unable to work.

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED FOR FURTHER PROCEEDINGS under sentence four of 42 USC § 405(g) consistent with this opinion.

IT IS SO ORDERED.

Dated this  26th  day of September, 2007.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

PAGE 8 - OPINION AND ORDER